UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HEATHER SAHRLE,

                              Plaintiff,

                                                  Case No. 10-CV-6631-FPG

v.

                                                  DECISION AND ORDER

GREECE CENTRAL SCHOOL DISTRICT,

                                Defendant.

_____

## INTRODUCTION

      Plaintiff Heather Sahrle ("Plaintiff") commenced this action alleging retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("the Rehabilitation Act"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law § 290, *et seq.* ("NYHRL"). ECF No. 1. In her Complaint ("Compl."), Plaintiff alleges that her employer, Greece Central School District ("the District" or "Defendant") brought disciplinary charges against her in retaliation for, *inter alia*, advocating on behalf of her disabled students. Compl., ¶¶ 7-97.

      Currently pending before the Court is Defendant's Motion for Summary Judgment. ECF No. 39. For the following reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part.

BACKGROUND[1]

Defendant is a School District organized under the New York Education Law and is a political subdivision of New York State. The District operates several elementary, middle, and high schools within the town of Greece, New York. Plaintiff was employed by the District as a certified special education teacher, most recently working at Greece Athena Middle School ("Athena"). Def. Stmt. ¶¶ 1-3.

The relevant events in this case took place during the 2008-09 school year, when Plaintiff last actively taught for the District. In 2008-09, Plaintiff worked in a 12:1:3 special education classroom with three teaching assistants, a classroom monitor, and other staff members who specialized in the special education environment. Def. Stmt. ¶¶ 4-9. During this time, Plaintiff reported to John Rivers ("Prin. Rivers"), Principal of Athena.  Kim O'Connor ("O'Connor") was the Assistant Director of Human Resources. Def. Stmt. ¶¶ 10-12.

In Plaintiff's 12:1:3 classroom, there were generally twelve students, one teacher, three teaching assistants, and one classroom monitor. The 12:1:3 classroom housed children with significant needs, including medical needs.  The students in Plaintiff's classroom ranged in age from 11 to 14 years old, but functioned at a cognitive level of 1 to 4 years old. Def. Stmt. ¶¶ 13-15.

I.      Classroom Conflict

Beginning in May 2009, friction arose between Plaintiff, her classroom monitor, Kathy Kroeger ("Kroeger"), and two teaching assistants, Laura Boehm ("Boehm"), and Joan Westphal ("Westphal").  Kroeger first contacted Prin. Rivers in May 2009, to lodge complaints against

---

[1]      The following facts are drawn from the Defendant's Statement of Undisputed Facts ("Def. Stmt."), ECF No. 39-6,  and viewed in the light most favorable to Plaintiff as the non-moving party.  Plaintiff did not file an Opposing Statement of Material Facts so the Court deems admitted the Defendant's Statement to the extent the facts reference admissible evidence in the record.  *See* Loc. R. Civ. P. 56 (2); Fed. R. Civ. P. 56(c)(1) .

Case 6:10-cv-06631-FPG-JWF   Document 46   Filed 09/06/16   Page 3 of 19

Plaintiff for mishandling a student field trip. In early June 2009, Kroeger made another complaint to O'Connor in Human Resources regarding the same issue, and stated that Westphal was harassing Kroeger for her previous complaints to the administration. Finally, Kroeger complained to O'Connor for Plaintiff's failure to intervene in the harassing behavior by Westphal. Def. Stmt. ¶¶ 17-21.

On June 22, 2009, Boehm became involved in the conflict, telling O'Connor that she overheard Westphal threaten Kroeger, and supported Kroeger's claims of harassment. She also complained that Plaintiff was not appropriately intervening in the situation. Boehm claimed that Plaintiff failed to intervene another time when Westphal refused to assist Boehm in handling an out of control child. Def. Stmt. ¶¶ 22-24.

In response, Prin. Rivers and O'Connor met with Plaintiff, who shared her observations but indicated that she had not witnessed the complained-of incidents. Def. Stmt. ¶¶ 25-26.

II.    Allegations of Student Mistreatment

On June 24, 2009, Boehm escalated her complaints to O'Connor, this time alleging that Plaintiff had pushed and dragged students, yelled, put students in excessive time-outs, improperly physically handled the students, and mocked a child's anatomy. Boehm stated that Plaintiff immobilized a student's wheelchair using a broomstick in the previous school year, and improperly catheterized a student on another occasion. Boehm typed her concerns onto a "short list" for Prin. River and O'Connor to review. Def. Stmt. ¶¶ 27-31; Def. Ex. E. During her meeting with the two administrators, she repeated her allegations that Westphal was harassing other employees, and Plaintiff did nothing to stop it. Def. Stmt. ¶ 32.

Boehm commented that she had not reported her observations earlier because Plaintiff had "touted that she was good friends with O'Connor and [Athena's Assistant Principal], that she

was 'high up' in the teacher's union, and that her husband worked for the police department," which Boehm believed was intended to intimidate her and other staff members. *Id.* ¶¶ 37-38.

O'Connor determined that the matter would be investigated, and on June 25, 2009, she and Prin. Rivers spoke with Janelle Steve, the third teaching assistant in Plaintiff's classroom, and with Andy Casini, an Occupational Therapist. *Id.* ¶¶ 40-47. Mr. Casini testified that Plaintiff made inappropriate comments to or in front of students, withheld lunch from students, and improperly physically restrained students. He also presented a six-page document outlining specific issues that echoed Boehm's belief that Plaintiff tried to dissuade witnesses from expressing their concerns about her.   *Id.* ¶¶ 48-58. O'Connor also met with another teaching assistant from Plaintiff's classroom from a previous school year and documented that meeting. *Id.* ¶¶ 64-66.

O'Connor reported this information to the Deputy Superintendent Don Nadolinski ("Dep. Supt. Nadolinksi"), and later, District Superintendent Steven Achramovitch ("Supt. Achramovitch"). *Id.* ¶¶ 67-69.

III.    Investigation

Supt. Achramovitch began arranging an external investigation into Plaintiff's conduct, and in the meantime, removed her from her summer teaching assignment for "safety purposes." Def. Stmt. ¶¶ 72-75. On July 1, 2009, Plaintiff was notified that she had been re-assigned from her teaching role and was to review Individual Education Plans in the District offices that summer. *Id.* ¶¶ 76-77.

During the months of July and August, outside counsel and O'Connor conducted a formal investigation into the allegations by the four staff members previously interviewed by O'Connor. O'Connor also interviewed other individuals who had a connection to Plaintiff's classroom. *Id.* ¶

78. At the conclusion of the second round of interviews, O'Connor and counsel drafted a Summary Report containing factual findings. O'Connor found the initial reports of the four witnesses, as well as "other new information" to be corroborating and credible to support the allegations. *Id.* ¶¶ 79-83. O'Connor noted that one District employee interviewed, a Speech Language Pathologist named Kerri Volkmuth, did not corroborate the others' reports.[2]

In August 2009, O'Connor and Dep. Supt. Nadolinksi met with Plaintiff to review the Summary Report with her.  Plaintiff appeared with union representation, and gave no response to the allegations. *Id.* ¶¶ 84-87.

Supt. Achramovitch received the Summary Report, found that it reflected unacceptable professional conduct, and decided that the District should seek termination of Plaintiff through the N.Y. Educ. L. § 3020-a disciplinary process. According to the Superintendent, the decision was made by him alone, without direction from the other administrators, such as O'Connor or Prin. Rivers. *Id.* ¶¶ 87-89.

IV.     § 3020-a Proceedings

Asst. Supt. Nadolinski recommended to the Board of Education that disciplinary charges be preferred, and the School Board agreed to prefer charges on September 22, 2009. Plaintiff was notified of the § 3020-a charges on September 23, 2009. Def. Stmt. ¶¶ 91-93.

Plaintiff's alternative work assignment in the District's Special Education Office continued into the following school year (2009-10), and thereafter while the § 3020-a charges remained pending. *Id.* ¶¶ 101-102.

Disciplinary hearings concerning Plaintiff's § 3020-a charges were held between 2010 and 2013, during which time multiple witnesses testified. The District had filed four charges, all

---

[2]     Despite the District's concerns that Ms. Volkmuth "exhibited some of the same behaviors" as Plaintiff, she was granted tenure for the 2009-10 school year. Def. Stmt. ¶¶ 95-100.

alleging "Conduct Unbecoming a Teacher," with each charge containing multiple specifications and sub-specifications alleging specific conduct by Plaintiff. Ultimately, Plaintiff was found guilty of the following: Charge No. 1, Specification 3(d); Charge No. 2, Specification 8(b) through 8(h); Charge No. 3, Specification 2(a), (b), (e), and (g); Charge No. 3, Specification 3, in part; Charge No. 3, Specification 4(d) and (g). Those charges encompassed inappropriate methods to manage student behavior; inappropriate restraint hold on a student, inappropriate refusal to allow students to remain in a classroom during a fire drill; inappropriate comments made about staff and faculty; and inappropriate topics of conversation discussed in front of students and/or staff. Def. Stmt. ¶¶ 104-108. As a result, Plaintiff was given a half-year suspension without pay. Plaintiff is currently still employed with the District, although was on paid medical leave at the time the instant Motion was filed. *Id.* ¶¶ 103, 109-110.

Following the Hearing Officer's determination in August 2013, Plaintiff initiated a state court proceeding pursuant to N.Y. Civ. Prac. Law and Rules § 7511, seeking to have that determination vacated. On September 9, 2015, a Supreme Court Justice rejected Plaintiff's request, but noted that during the two year time period in which the hearing was conducted, the District withdrew some of its charges and observed that Plaintiff's "lesser punishment" of a half-year suspension without pay took into determination Plaintiff's "unblemished record," her "lack of acceptance of responsibility, and the seriousness of her misconduct." Def. Supp. Ex. FF (ECF No. 45-4) at 2.

V.     Plaintiff's Allegations

In the Complaint, Plaintiff alleges that she engaged in the following protected activity for which she was retaliated against by the District: (1) challenging the District's handling and treatment of disabled special education students on various dates; (2) filing a "Worker's

Harassment Complaint" regarding Kroeger and Boehm on June 12, 2009; and (3) filing a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 17, 2009.[3] Compl. ¶¶ 12, 18, 36.

Defendant moves for summary judgment dismissing the Complaint on the following grounds: (1) Plaintiff fails to establish a *prima facie* case of retaliation under the Rehabilitation Act and the ADA; (2) Plaintiff fails to establish pretext with regard to her Rehabilitation Act and ADA claims; (3) Plaintiff fails to establish a *prima facie* case of retaliation under the Title VII and the NYHRL; and (4) Plaintiff fails to establish pretext with regard to her Title VII and NYHRL claims. Def. Mem. (ECF No. 39-9) at 5-25. For the reasons that follow, Defendant's motion is denied with respect to Plaintiff's Rehabilitation Act and ADA claims, and granted as to her Title VII and NYHRL claims.

<u>DISCUSSION</u>

I.      Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Regarding materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. More importantly, "summary judgment will not lie if the

---

[3]     The Court notes that Plaintiff's EEOC complaint was filed 6 months after the District's investigation and 3 months after the § 3020-a charges were preferred.   As such it cannot form the basis of a retaliation claim and is disregarded for purposes of this motion.   *See, e.g., Hassan v. City of Ithaca, N.Y.*, No. 6:11-CV-06535, 2015 WL 5943492, at *14 (W.D.N.Y. Oct. 13, 2015) ("the alleged protected activity occurred *after* the adverse action, and therefore cannot be a "but for" cause of the adverse action.") (emphasis added).

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.   When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250.

 "In assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Duse v. Int'l Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001) (citing *e.g., Anderson*, 477 U.S. at 255).   However, "[i]f the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and do not suffice to defeat a motion for summary judgment." *Duse*, 252 F.3d at 158, citing *e.g.*, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir. 1992), *cert. denied,* 508 U.S. 909 (1993); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986) (the existence of a factual issue will not suffice to defeat a motion for summary judgment where that issue is not material to the ground of the motion).


II.    *McDonnell Douglas* Framework

Claims of retaliation under the ADA, NYHRL, and the Rehabilitation Act are analyzed under the same standard as Title VII claims. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (applying the Title VII standard to ADA, NYHRL, and Rehabilitation Act

retaliation claims). To survive summary judgment on a retaliation claim, a public employee must establish "(1) that she engaged in [a protected activity], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action . . . ." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (citations omitted). If those elements are established, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational juror conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia*, 313 F.3d at 721

III.     Rehabilitation Act and ADA Retaliation Claims (First and Second Causes of Action)

Plaintiff alleges that she was retaliated against by the District under the Rehabilitation Act and the ADA based on her advocacy on behalf of disabled students when she was subjected to disciplinary action and demoted from her teaching position. Compl. ¶¶ 12-14, 19-23, 27, 73-74. Defendant argues that Plaintiff fails to establish a *prima facie* case of retaliation and fails to show that the District's legitimate, non-retaliatory reasons for initiating the §3020-a charges were pretextual. Def. Mem. at 5-20. The Court disagrees, and finds that the first two Causes of Action withstand summary judgment.

A.     *Prima Facie* Case

First, Defendant does not appear to dispute that Plaintiff engaged in protected activity in the form of: (1) a 2003 complaint to a Principal at Brookside Elementary school regarding psychological testing to students; (2) her remarks to a local newspaper in the 2003-04 school year concerning the teachers' union, contractual issues, and special education teachers' viewpoints; (3) a May 2009 complaint concerning the criteria for qualification for students to

attend the summer school program; (4) a complaint to Prin. Rivers during the 2007-08 school year regarding the need for an air conditioning unit for a particular student; (5) 2007 and 2008-09 complaints about medically-fragile students having a proper entryway to the building; (6) a 2007 complaint to Prin. Rivers regarding a vacant classroom monitor position within her classroom; (7) a 2008 complaint that her students did not have an adequate location to participate in gym class; and (8) multiple requests for assistance in 2007 to obtain a feeding tube for a student in order for the student to attend class. Def. Stmt. ¶¶ 134; Def. Mem. at 14-15.

Second, Defendant also acknowledges that the imposition of the § 3020-a charges against Plaintiff constitutes a materially adverse employment action. Def. Mem. at 5.  Although the District disputes that the other alleged actions, such as Plaintiff's summer re-assignment, a counseling memorandum, and removal from her regularly-assigned class, were materially adverse,  *see id.* at 7, Plaintiff has already met her burden with respect to the third *McDonnell* element because the § 3020-a charges led to Plaintiff's unpaid suspension. *See, e.g., Bowles v. N.Y.C. Transit Auth.*, 285 F. App'x 812, 814 (2d Cir. 2008) (Plaintiff's unsatisfactory performance evaluations which led to the initiation of 3020–a charges culminating in the suspension of Plaintiff qualify as adverse employment actions since Plaintiff suffered a "materially adverse change in the terms and conditions of employment . . .  [that was] more disruptive than a mere inconvenience or an alteration of job responsibilities.") (citations and internal quotation marks omitted).

Accordingly, Defendant's primary challenge to Plaintiff's *prima facie* case relates to the element of causation.

1.    Causation

The final element of a *prima facie* retaliation claim, causation, may be shown directly (such as through "evidence of retaliatory animus directed against the plaintiff by the defendant") or indirectly (such as "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence"). *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). To this end, the District argues that Plaintiff cannot establish temporal proximity because she had advocated for years without suffering an adverse employment action, particularly in the years prior to 2009. Def. Mem. at 13-14; Def. Stmt. ¶¶ 134(a)-(m). Between 2005 and 2007, however, a class action lawsuit was pending in this Court, brought by eight families against the District, alleging that it had denied a free appropriate public education to the plaintiff class by imposing illegal caps on the number of students classified and by curtailing the services and supports made available to special education students.[4] Def. Stmt. ¶¶ 155-56; Sahrle Decl. (ECF No. 40) ¶ 41. Drawing all reasonable inferences in Plaintiff's favor, a reasonable factfinder could conclude that the District was not in a position to suspend or terminate a special education teacher or employee with a Federal lawsuit pending during that time. *See* Def. Mem. at 13 (noting that Kroeger pursued legal action against the District and suffered no adverse action). In addition, although Plaintiff's complaints to the administration date back to 2003, the most recent in time was in May 2009, when Plaintiff objected to the criteria for students to qualify for the summer school program. Def. Ex. A at 138, 145-48. It is undisputed that the investigation into Plaintiff's conduct had been arranged prior to July 2009, she was removed from her summer assignment on July 1, 2009, and the 3020-a charges were preferred on September 23, 2009. Def. Stmt. ¶¶ 72, 73, 93. The District therefore began taking

---

[4]    *See K.B., et al. v. Bd. of Educ. of the Greece Cent. Sch. Dist.*, No. 05-CV-6261(DGL).  That case ultimately settled by way of a Consent Decree.

steps towards Plaintiff's termination approximately two months after her most recent protected activity. This, combined with the evidence of record discussed below, is sufficient to establish causation. *See generally Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (noting that the Second Circuit "has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation.")

The Court finds that Plaintiff has provided sufficient indirect evidence to establish her *prima facie* case, including: Plaintiff's extensive and vocal advocacy efforts dating back to 2003; a prior reprimand by administrators for Plaintiff speaking with the local newspaper regarding special education issues in the District; the fact that Boehm and Kroeger did not report the instances of abuse in Plaintiff's classroom until June 24th, 2009, despite having knowledge of the alleged instances up to a year earlier, and claiming that the instances of abuse were occurring "almost daily;" and an e-mail from Teaching Assistant Janelle Steve to O'Connor dated June 27, 2009, stating that she felt that the inquiry into Plaintiff's conduct was a "personal attack;" *see* Def. Stmt ¶¶ 37, 50; Def. Ex. A at 186, Def. Ex. F at 72, Pl. Ex. E & F; could lead a reasonable juror to conclude that Plaintiff's advocacy was a motivating factor in the District's decision to lodge charges against her.[5] *See Levitant v. City of NY Human Res. Admin.*, 625 F. Supp. 2d 85, 108 (E.D.N.Y. 2008) (three-month temporal proximity of the alleged retaliatory acts, coupled with plaintiff's other circumstantial evidence—including plaintiff's disputed evidence that many of the actions taken against him were without factual basis and his allegation that employer had

---

[5]     The Second Circuit has not yet definitively ruled on the causation standard for ADA/Rehabilitation Act claims. *See, e.g., Sherman v. County of Suffolk*, 71 F. Supp. 3d 332, 348 (E.D.N.Y. 2014) ("[T]he question of whether the heightened, 'but-for' standard of causation for Title VII retaliation claims . . .  applies to claims asserted under the ADA, is one that has not yet been addressed by the Second Circuit." (quoting *Castro v. City of New York*, 24 F. Supp. 3d 250, 269 n.34 (E.D.N.Y. 2014))). The Court assumes that Plaintiff is required to show only that her disability was a motivating factor, and not a "but-for" cause, of the adverse actions at issue.

policy prohibiting plaintiff from speaking native language at work—raised material issues of fact).

Defendant also argues that Plaintiff cannot establish causation because the decision-maker, Supt. Archamovitch, was unaware of the Plaintiff's alleged protected activity. Def. Mem. at 10. The Court finds this contention unpersuasive.

It is undisputed that Supt. Archamovitch served as the Acting Superintendent between December 2006, and July 2010. Def. Stmt. ¶¶ 137-38. Although his tenure in this position overlapped with Plaintiff's, including the time frame of the alleged protected activity, he nonetheless claims that he was not aware of those acts because Plaintiff never raised the issues with him or the School Board directly. Def. Mem. at 10. This does not lead to the conclusion, however, that he acted alone in making the determination to seek termination of Plaintiff through the 3020-a disciplinary process. To the contrary, the undisputed facts indicate that O'Connor and Asst. Supt. Nadolinski were actively involved in the investigation of Plaintiff and the preparation of the Summary Report, they presented that information to Supt. Archamovitch, and Asst. Supt. Nadolinski recommended to the Board of Education at a board meeting on September 22, 2009, that disciplinary charges be brought against Plaintiff. Def. Stmt. ¶¶ 67-69, 84-91. Assuming Supt. Archamovitch had no prior knowledge of Plaintiff's long-standing advocacy, the evidence at least supports a "cat's paw" theory of discrimination, in which "a non-decision maker with a discriminatory motive dupes an innocent decision maker into taking action against the plaintiff." *Saviano v. Town of Westport*, No. 04-CV-522, 2011 WL 4561184, at *7 (applying "cat's paw" theory to ADA retaliation claim); *see also, e.g., Nagle v. Marron*, 663 F.3d 100, 117–18 (2d Cir. 2011) (in First Amendment case, observing that under "cat's paw" theory, "final decision maker that relies entirely on an improperly motivated recommendation from a subordinate may render

the municipality liable."). Viewing these facts in the light most favorable to Plaintiff, a triable issue of fact exists as to whether Plaintiff's protected activities caused the investigation, disciplinary charges, the resulting suspension without pay, as well as the seemingly permanent re-assignment from teaching duties.

Here, Plaintiff has demonstrated that she suffered at least one adverse material change (most notably, the §3020-a charges), and a causal connection between the District's action and her protected activity to raise an inference of retaliation. Her *prima facie* case of retaliation under the ADA and Rehabilitation Act has therefore been established.

B.     The District's Justifications

Under the next step of the analysis, Defendant proffers a legitimate, non-discriminatory reason for the 3020-a charges, namely, Plaintiff's alleged mistreatment of students and other conduct "unbecoming a teacher." Def. Stmt. ¶¶ 78-81, 166-67; *see Missick v. City of New York*, 707 F. Supp. 2d 336, 349 (E.D.N.Y. 2010) (legitimate, non-discriminatory reasons for teacher's 3020-a charges included an attempt to videotape her classroom without parental consent, her active solicitation of and barter for pre-written recommendations, and complaints of racial comments in the classroom).

In order to succeed on her claims, Plaintiff must "demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation].'" *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

C.     Pretext

To create a material issue of fact and defeat a summary judgment based on pretext, the Plaintiff must produce "evidence that the defendant's proffered, non-discriminatory reason is a

mere pretext for actual discrimination. The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action].  In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and citations omitted).

On this record, the Court finds that material issues of fact exist, and further, that a rational jury could find that Defendant's reasoning is pretext.  The jury could make such a finding based upon the following: Plaintiff was found not guilty of a majority of charges against her; she previously had an unblemished teaching record dating back to 1993; the support for the disciplinary charges consisted largely of testimony by the same witnesses that altered their initial complaints in order to achieve a more severe consequence with respect to Plaintiff's employment status; and Plaintiff was previously reprimanded for making public criticisms of the District's handling of special education. *See* Def. Stmt. ¶¶ 20-32, 42-45, 48-53, 134.[6]  Although Defendant does not dispute that Plaintiff was found guilty of a handful of the charges following the § 3020-a hearing, *see* Def. Stmt. ¶ 108, neither party presents the Court with the Hearing Officer's decision. Also significant is the fact that Plaintiff was not terminated from employment and continues to work for the District, albeit in a clerical position. *Id.*, ¶¶ 2, 4, 110.  This begs the question as to whether the wrongdoing for which Plaintiff was found guilty was sufficient to warrant termination.

---

[6]      Plaintiff urges the Court to find evidence of pretext based on the "District's history of discriminating against special needs children and their advocates as set forth in the Consent Decree." Pl. Mem. (ECF No. 42) at 7. Courts have cautioned, however, that  "the existence of a class action lawsuit is not, in and of itself, evidence of prior mistreatment of employees in a protected class; " rather, "some nexus between the circumstantial evidence of general bias and the [adverse employment decision] is required." *Vidal v. Metro-N. Commuter R. Co.*, No. 3:12-CV-00248 MPS, 2014 WL 3868027, at *22 (D. Conn. Aug. 6, 2014), *appeal withdrawn* (Mar. 26, 2015) (internal quotation omitted). Plaintiff was not a party to those proceedings and therefore the Court rejects this argument.

In short, and despite Defendant's stated justifications, a reasonable factfinder could conclude that retaliation was a motivating factor in Plaintiff's § 3020-a charges based on Plaintiff's lengthy history of engaging in protected activity. *See, e.g., Separ v. Nassau Cty. Dep't of Soc. Servs.*, No. 11-CV-2668, 2014 WL 4437676, at *8 (E.D.N.Y. Sept. 9, 2014) (finding issue of fact as to pretext where plaintiff had history of litigation against employer between 1993 and 2008). It bears repeating that Plaintiff need not prove that she will ultimately prevail on her claims, but rather, she must present sufficient evidence to raise a genuine issue of fact, as "summary judgment is an exercise in issue finding[,] not issue determination." *Canpartners Investments IV, LLC v. All. Gaming Corp.*, No. 96 CIV. 9788, 1998 WL 391158, at *1 (S.D.N.Y. July 13, 1998).

For these reasons, Plaintiff's Rehabilitation Act and ADA retaliation claims (First and Second Causes of Action, respectively) survive Defendant's Motion for Summary Judgment.

VI.    Title VII and NYHRL Retaliation Claims (Third and Fourth Causes of Action)

As a threshold matter, Plaintiff appears to have abandoned these allegations as a basis for her claims, since she does not repeat them in her opposing papers, nor does she address Defendant's arguments with respect to the Third and Fourth Causes of Action. ECF No. 45 at 3; *see Frontera v. SKF USA, Inc.*, 2010 WL 3241123, at *10 (W.D.N.Y. Aug.16, 2010) (granting summary judgment on the basis of abandonment where the plaintiff failed to respond to the defendant's arguments); *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 390 (E.D.N.Y. 2013) (granting summary judgment on five claims not directly opposed in the plaintiff's opposition papers); *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998) (finding claims abandoned where plaintiff failed to address claims in opposition to defendants'

summary judgment motion) (citations omitted).  In any event, Plaintiff's claims under these two Causes of Action fail as a matter of law.

The District argues that Plaintiff fails to establish a *prima facie* case of retaliation under Title VII and NYHRL.  Def. Mem. at 20. Because Plaintiff has not established that she engaged in "protected activity" under those statutes, her *prima facie* case is deficient.

Plaintiff's Complaint states that the alleged protected activity under Title VII and NYHRL took the form of an internal "Worker's Harassment Complaint" against her co-workers and that the District retaliated against her on that basis. Compl. ¶ 90, 96.  Although Plaintiff initially characterized her complaint as one alleging a "hostile work environment" and "same-sex harassment" by Kroeger, she later testified that she understood same sex harassment as "two females having an issue," and that Kroeger's harassing behavior took the form of being insubordinate, being absent from work, and complaining about Plaintiff.  Def. Stmt. ¶¶ 113-117; Def. Ex. A at 85-87, 230-231.

It is well-settled that "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Benedith v. Malverne Union Free Sch. Dist.*, 38 F.Supp.3d 286, 322 (E.D.N.Y. 2014) (quoting *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513, 537 (S.D.N.Y. 2008)). A plaintiff is not required to show that the conduct she opposed was in fact unlawful.  Instead, the plaintiff need only have had a "good faith, reasonable belief" that she was opposing a practice prohibited by Title VII. *Kessler v. Westchester Cty. Dept. Soc. Svcs.*, 461 F.3d 199, 210 (2d Cir. 2006). Complaints presenting general allegations of harassment unrelated to a protected class are not protected activity under Title VII. *See, e.g., Ruhling v. Tribune Co.*, No. 04-CV-2430, 2007 WL 28283, at *21 (E.D.N.Y. Jan. 3, 2007) (internal

complaint of favoritism was not protected activity where plaintiff had not framed complaint as involving discriminatory conduct).

Here, Plaintiff testified that she complained about Kroeger's behavior because Kroeger's "attitude had changed" and she became "short and snippy" with Plaintiff in the classroom. Def. Ex. A at 87.  She further explained that Kroeger never made any sexual remarks towards her, and that her understanding of a "hostile work environment" was simply "an environment where you're being harassed." *Id.* at 89.  This is insufficient to state a claim of retaliation under Title VII.

Judge Elizabeth A. Wolford of this district recently addressed a similar issue in *Semmler v. Cty. of Monroe*, 35 F. Supp. 3d 379 (W.D.N.Y. 2014). In advancing a claim of retaliation under Title VII, the plaintiff's alleged protected activity was based upon her complaint of same-sex harassment by a female co-worker, which included "verbal beratement and hostile gestures," scolding, and the plaintiff being called a "bitch" on one occasion. *Semmler*, 35 F. Supp. 3d at 381. That plaintiff later acknowledged that she did not believe the hostile behavior was based on her gender, and that she believed she was subject to "same sex harassment" solely because the co-worker in question was a woman and not a man. *Id.* at 385. In rejecting the plaintiff's Title VII retaliation claim, Judge Wolford held that "[n]o reasonable person could have believed that [the co-worker's] conduct, as described by Plaintiff, violated Title VII's prohibition on gender-based discrimination," and that "Plaintiff's mistaken belief that all 'harassment' by a female coworker constituted 'same sex harassment' does not amount to a good faith, reasonable belief that Defendant was engaged in an employment practice prohibited by Title VII." *Id.* at 385 (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15-16 (2d Cir. 2013)).  The same reasoning applies here. Plaintiff's complaints of Kroeger "not responding

well" in the classroom and giving Plaintiff "dirty looks" was not gender-based and therefore does not constitute same-sex harassment such to form the basis of a Title VII retaliation claim. *See* Def. Stmt. ¶ 120.  Accordingly, she cannot establish a *prima facie* case of retaliation based upon her filing of a "Worker's Harassment Complaint" with the District.

Because Plaintiff's *prima facie* case of retaliation under Title VII and the NYHRL fails as to the first element of the *McDonnell* test, and because she has effectively abandoned these claims by not addressing them in her opposition papers, the Third and Fourth Causes of Action must be dismissed.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED IN PART and DENIED IN PART.  Specifically, the Motion is granted with respect to the Third and Fourth Causes of Action, and those claims, which alleged retaliation under Title VII and NYHRL, are dismissed with prejudice. The Motion is denied with respect to the First and Second Causes of Action, which allege retaliation under the Rehabilitation Act and the ADA.

IT IS SO ORDERED.

Dated: September 6, 2016
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court